```
            IN THE UNITED STATES DISTRICT COURT
             FOR THE DISTRICT OF NEW JERSEY

LAWRENCE J. MILLS, et al.        :      CIVIL ACTION
                                 :
          v.                     :
                                 :
GOLDEN NUGGET ATLANTIC CITY,     :
LLC, et al.                      :      NO. 19-19610
```

MEMORANDUM

Bartle, J.                                           June 22, 2020

Plaintiffs Lawrence J. Mills ("Mills") and Daniel Chun ("Chun"), acting pro se, commenced this action against defendants Golden Nugget Atlantic City, LLC ("Golden Nugget"), Landry's LLC, several employees of Golden Nugget, and five members of the New Jersey State Police, Detective Sergeant Richard Wheeler ("Wheeler"), Detective Sergeant Mark Devine ("Devine"), Captain Michael Flory ("Flory"), Detective Sergeant Lance Moorhouse ("Moorhouse"), and Detective Sergeant First Class Carl Smallwood ("Smallwood") for alleged violations of their rights under the United States Constitution and New Jersey Constitution as well as for the commission of various torts under New Jersey law. The claims all stem from the arrest of Mills and Chun at the Golden Nugget Casino on November 2, 2017.

Before the court are the motions of defendants Wheeler, Flory, Moorhouse, Smallwood, and Devine to dismiss the complaint for failure to state a claim under Rule 12(b)(6) of the Federal Rules of Civil Procedure.

I

When deciding a Rule 12(b)(6) motion, the court must accept as true all factual allegations in the complaint and draw all inferences in the light most favorable to the plaintiff. See Phillips v. Cty. of Allegheny, 515 F.3d 224, 233 (3d Cir. 2008); Umland v. PLANCO Fin. Servs., Inc., 542 F.3d 59, 64 (3d Cir. 2008). We must then determine whether the pleading at issue "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). A claim must do more than raise a "mere possibility of misconduct." Fowler v. UPMC Shadyside, 578 F.3d 203, 211 (3d Cir. 2009) (quoting Iqbal, 556 U.S. at 679). Under this standard, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." Iqbal, 556 U.S. at 678. On a motion under Rule 12(b)(6), the court may consider "allegations contained in the complaint, exhibits attached to the complaint, and matters of public record." Pension Benefit Guar. Corp. v. White Consol. Indus., Inc., 998 F.2d 1192, 1196 (3d Cir. 1993) (citing 5A Charles Allen Wright & Arthur R. Miller, Federal Practice and Procedure § 1357 (2d ed. 1990)).

II

The following factual allegations from plaintiffs' complaint, and the undisputedly authentic documents attached thereto, are taken as true for present purposes. Golden Nugget is a casino and hotel located in Atlantic City, New Jersey. On or about November 2, 2017, Chun and Mills traveled from Maryland to the Golden Nugget. Chun brought with him $1,000 in cash that Mills had given him for the purpose of gambling with the understanding that they would split any winnings. At the time, the Golden Nugget was running a promotion whereby the casino would match any person's first-time deposit to their internet gaming account up to $1,000.

Once at the Golden Nugget, Chun went to the gaming floor and deposited the $1,000 at the cage to create an internet gaming account. Chun then went to the Golden Nugget's Wine and Wi-Fi Lounge and attempted to log into his online account but was unable to do so. Chun contacted Golden Nugget's technical support and was instructed to wait at least thirty minutes before attempting to log in.

Meanwhile, a Golden Nugget Cage Supervisor requested surveillance photographs of Chun based on the belief "that Chun and his associates are involved in I-Gaming scam." The Golden Nugget reported to the New Jersey State Police that several individuals from Maryland had deposited $1,000 in cash at the

casino for the purpose of establishing internet gaming accounts. Officers thereafter arrived at the casino to surveil Mills, Chun, and others.

Chun continued to attempt to withdraw or otherwise access the funds in his account, but the casino repeatedly thwarted his efforts. Blaming technical issues, casino personnel instructed Chun to wait a period of time and then try again to access the money. Meanwhile, the officers observed Mills sitting in the casino's Wine and WiFi Lounge using his laptop. Mills was also overheard speaking on his cell phone to an unknown individual about his inability to withdraw or use the funds. The officers also observed Mills and Chun, along with another individual, walking back and forth from the main cage to the lounge.

After a final unsuccessful attempt to withdraw money from his account, Chun and the other individual left Mills and headed to the parking garage. Officers Wheeler, Flory, Moorhouse, and Smallwood followed and approached Chun and the other individual at their vehicle. One of the officers slammed Chun's face against his car, placed him under arrest, and then searched his person. Chun was transported to a police station where he was held for three hours. Mills was arrested by Devine

and another officer in the Wine and WiFi Lounge.[1]  The officers seized Mills' driver's license, briefcase, laptop, and cell phone.  Mills was transported to a police station where he was placed in a holding cell with his left arm cuffed to a metal bench for several hours.

Mills was charged with a third-degree felony, theft by deception, in violation of N.J. Stat. Ann. § 2C:20-4.  That charge was later administratively dismissed on June 1, 2018.  Chun was never charged with any crime.

In their complaint, plaintiffs allege the following causes of action against defendants Wheeler, Flory, Moorhouse, Smallwood, and Devine:  (1) conversion (Count I); (2) false arrest (Count VII); (3) battery (Count VIII); (4) false imprisonment (Count IX); (5) negligence (Count X); (6) gross negligence (Count XI); (7) false light (Count XIII); (8) invasion of privacy (Count XIV); (9) defamation, libel, and slander (Count XV); (10) civil conspiracy (Count XVI); (11) intentional infliction of emotional distress (Count XVII); (12) negligent infliction of emotional distress (Count XVIII), (13) malicious prosecution (Count XIX); (14) malicious abuse of process (Count XX); (15) malicious use of process (Count XXI); (16) conspiracy to violate civil rights under 42 U.S.C. § 1983

---

1.  The other officer, identified as Detective Nelson, is named as a defendant in a separate civil action.

(Count XXII); (17) violation of Fourth Amendment rights against unreasonable searches, seizures, and excessive force under 42 U.S.C. § 1983 (Counts XXIII, XXIV and XXV); (18) violation of their Fourteenth Amendment rights to substantive and procedural due process under 42 U.S.C. § 1983 (Counts XXVI, XXVII, and XXVIII); and (19) violation of the New Jersey Civil Rights Act, N.J. Stat. Ann. §§ 10:6-1 et seq. (Count XXIX).

### III

We begin with plaintiffs' claims in Counts XXII through XXIX of the complaint for violation of their rights under the Fourth and Fourteenth Amendments pursuant to 42 U.S.C. § 1983 and the New Jersey Civil Rights Act, N.J. Stat. Ann. § 10:6-1 et seq.  Section 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983.  To state a claim under § 1983, a plaintiff must allege:  (1) the violation of a right secured by the Constitution or laws of the United States; and (2) that the alleged deprivation was committed or caused by a person amenable to suit under Section 1983 and acting under color of state law.

West v. Atkins, 487 U.S. 42, 48 (1988).  The New Jersey Civil Rights Act is closely modeled after § 1983 and construed identically.  See, e.g., Coles v. Carlini, 162 F. Supp. 3d 380, 404 (D.N.J. 2015).

In the complaint, plaintiffs state that they bring these claims against Wheeler, Devine, Flory, Moorhouse, and Smallwood in both their individual and official capacities. Plaintiffs now concede that defendants in their official capacities are not persons subject to suit under § 1983 and the New Jersey Civil Rights Act.  See Will v. Michigan Dep't of State Police, 491 U.S. 58, 71 (1989); Blanciak v. Allegheny Ludlum Corp., 77 F.3d 690, 697 (3d Cir. 1996).  Accordingly, we will grant the motion of defendants to dismiss Counts XXII through XXIX to the extent that plaintiffs bring these claims against them in their official capacities.

As to the claims against defendants in their individual capacities, defendants assert that they are entitled to qualified immunity.  The doctrine of qualified immunity shields government officials from money damages unless a plaintiff pleads facts showing:  (1) "that the official violated a statutory or constitutional right"; and (2) "that the right was 'clearly established' at the time of the challenged conduct."  Ashcroft v. al-Kidd, 563 U.S. 731, 735 (2011) (citing Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)).

-7-

The Supreme Court has explained, "[t]o be clearly established, a right must be sufficiently clear that every 'reasonable official would [have understood] that what [the official] is doing violates that right.'" Reichle v. Howards, 566 U.S. 658, 664 (2012) (quoting al-Kidd, 563 U.S. at 741) (internal quotation marks omitted). Further, "existing precedent must have placed the statutory or constitutional question beyond debate." al-Kidd, 563 U.S. at 741. Nonetheless, a right can be clearly established without "a case directly on point." Id. When analyzing whether the official's conduct violated a clearly established right, the inquiry "must be undertaken in light of the specific context of the case, not as a broad general proposition." Brosseau v. Haugen, 543 U.S. 194, 198 (2004) (quoting Saucier v. Katz, 533 U.S. 194, 201 (2001)).

"The protection of qualified immunity applies regardless of whether the government official's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (internal citation and quotation marks omitted). "[Q]ualified immunity is an objective question to be decided by the court as a matter of law." Curley v. Klem, 499 F.3d 199, 210 (3d Cir. 2007) (internal citation and quotation marks omitted). Courts are to provide "ample room for mistaken

-8-

judgments" pursuant to the doctrine of qualified immunity before imposing civil liability upon law enforcement officers. Malley v. Briggs, 475 U.S. 335, 343 (1986). In short, all law enforcement officers except for "the plainly incompetent or those who knowingly violate the law" are entitled to qualified immunity. Id. at 341.

The Fourth Amendment to the United States Constitution provides:

> The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.[2]

U.S. Const. amend. IV. Because arrests are "seizures" of "persons," they must be reasonable under the circumstances. See Payton v. New York, 445 U.S. 573, 585 (1980).

A warrantless arrest is reasonable if the officer has probable cause to believe that the suspect committed a crime. Atwater v. City of Lago Vista, 532 U.S. 318, 354 (2001). To determine whether an officer had probable cause for an arrest, "we examine the events leading up to the arrest, and then decide

---

2. The protection of the Fourth Amendment, while initially applicable only to the federal government, is now applicable to the states since it has been incorporated by the due process clause of the Fourteenth Amendment. See Mapp v. Ohio, 367 U.S. 643, 655 (1961).

'whether these historical facts, viewed from the standpoint of an objectively reasonable police officer, amount to' probable cause." Maryland v. Pringle, 540 U.S. 366, 371 (2003) (quoting Ornelas v. United States, 517 U.S. 690, 696 (1996)). Because probable cause "deals with probabilities and depends on the totality of the circumstances, it is a fluid concept that is not readily, or even usefully, reduced to a neat set of legal rules." District of Columbia v. Wesby, 138 S. Ct. 577, 586 (2018) (internal citations and quotations omitted).

Mills and Chun allege that they were arrested and searched without probable cause in violation of their clearly established rights to be free from unreasonable searches and seizures under the Fourth Amendment.  It is clear from the complaint and summons issued to Mills at the time of his arrest that the only facts officers had was information provided by the Golden Nugget that Chun and others had deposited $1,000 in cash to their online gaming accounts.  The officers had surveilled Mills and observed him sitting in the Golden Nugget's Wine and WiFi Lounge using a laptop computer.  The officers also overheard Mills on his cell phone speaking to "an unknown person about their inability to make a withdraw[al] or play funds deposited into their igaming account."  Chun then left with another individual to the parking garage while Mills remained in

the lounge. Chun was arrested at his vehicle while Mills was arrested in the lounge.

Mills was charged with theft by deception, a third-degree felony under New Jersey Law:

> Theft by deception.
>
> A person is guilty of theft if he purposely obtains property of another by deception. A person deceives if he purposely:
>
> a. Creates or reinforces a false impression, including false impressions as to law, value, intention or other state of mind, and including, but not limited to, a false impression that the person is soliciting or collecting funds for a charitable purpose; but deception as to a person's intention to perform a promise shall not be inferred from the fact alone that he did not subsequently perform the promise;
>
> b. Prevents another from acquiring information which would affect his judgment of a transaction; or
>
> c. Fails to correct a false impression which the deceiver previously created or reinforced, or which the deceiver knows to be influencing another to whom he stands in a fiduciary or confidential relationship.
>
> The term "deceive" does not, however, include falsity as to matters having no pecuniary significance, or puffing or exaggeration by statements unlikely to deceive ordinary persons in the group addressed.

N.J. Stat. Ann. § 2C:20-4. The information possessed by the officers at the time of plaintiffs' arrest was that plaintiffs

-11-

had travelled from another state to gamble at the Golden Nugget, that Chun had deposited money at the casino for the purpose of establishing an internet gaming account, that Mills and Chun had walked within the casino, and that Mills had used a laptop and a cell phone in the Wine and WiFi Lounge of the casino.[3]

No reasonable officer could have understood these facts and circumstances to constitute probable cause to believe that Mills and Chun had committed the crime of theft by deception or any other violation of New Jersey law. See Groman v. Twp. of Manalapan, 47 F.3d 628, 634-35 (3d Cir. 1995); Merkle v. Upper Dublin Sch. Dist., 211 F.3d 782, 789 (3d Cir. 2000). Thus, Mills and Chun have alleged facts sufficient to establish a violation of their constitutional rights, that is, the right under the Fourth Amendment to be free from arrest without probable cause. Such right was clearly established at the time of plaintiffs' arrest. See, e.g., Orsatti v. N.J. State Police,

---

3. The summons and complaint also states that Mills committed an offense "by paying other individuals to open online internet gaming accounts to receive 'match play' new account bonuses and using those 'match play' new account bonuses and using those 'match play' bonuses to obtain $6,000 to which he was not entitled." It appears that the officers only obtained this information after plaintiffs had been formally arrested. Therefore it is irrelevant to the analysis of whether the officers had sufficient facts at the time of the arrest to establish probable cause. See, e.g., United States v. Glasser, 750 F.2d 1197, 1206 (3d Cir. 1984). Regardless, defendants have failed to explain how taking advantage of a promotion offered by the casino would constitute illegal activity.

71 F.3d 480, 483 (3d Cir. 1995).  When the arrest of a person is undertaken without probable cause as under the facts presented here, the search of that person and seizure of his or her property incident to arrest also violates that person's clearly established rights under the Fourth Amendment.  See United States v. Robinson, 414 U.S. 218, 235 (1973).  Accordingly, the complaint states viable claims that defendants violated plaintiffs' clearly established rights to be free from unreasonable search and seizure under the Fourth Amendment.  Defendants are not entitled to qualified immunity.

Accordingly, the motion of defendants to dismiss Counts XXII through XXIX on qualified immunity grounds will be denied.[4]

### IV

We next turn to the claims of plaintiffs for conversion, false arrest, battery, false imprisonment, negligence, gross negligence, false light, invasion of privacy, defamation, libel, and slander, civil conspiracy, intentional infliction of emotional distress, negligent infliction of emotional distress, malicious prosecution, malicious abuse of

---

4.  The parties do not separately analyze plaintiffs' claims under the Fourteenth Amendment.  At this stage of the proceedings, we conclude that defendants are not entitled to qualified immunity on those claims for the reasons discussed above in connection with plaintiffs' Fourth Amendment claims.

process, and malicious use of process in Counts I, VII-XI, and XIII-XXI of the complaint.

Defendants assert that the tort claims of Mills must be dismissed because Mills failed to file timely a notice of his claims as required under the New Jersey Tort Claims Act. Under this statute, notice of claims must be filed within 90 days of the claims' accrual. See N.J. Stat. Ann. § 59:8-8. The statute further provides that "[n]o action shall be brought against a public entity or public employee under [the TCA] unless the claim upon which it is based shall have been presented in accordance with the procedure set forth in this chapter." Id. § 59:8-3.

"[A] claim accrues on the date on which the underlying tortious act occurred." Ben Elazar v. Macrietta Cleaners, Inc., 165 A.3d 758, 764 (N.J. 2017). The unlawful search and seizure of Mills occurred on November 2, 2017. Thus, the 90-day period for filing a notice of claim expired on January 31, 2018 as to Mills' claims for conversion, false arrest, battery, false imprisonment, negligence, gross negligence, false light, invasion of privacy, defamation, libel, and slander, civil conspiracy, intentional infliction of emotional distress, and negligent infliction of emotional distress. Mills waited to file his notice until August 23, 2018, nearly seven months too late. Thus, these tort claims are barred.

However, Mill's claims for malicious prosecution, malicious abuse of process, and malicious use of process in Counts XIX-XXI of the complaint are not barred.  Such claims do not accrue until the criminal proceeding has terminated in the plaintiff's favor.  See Geissler v. City of Atl. City, 198 F. Supp. 3d 389, 402 (D.N.J. 2016).  Mill's notice of claim was filed within 90 days from June 1, 2018, the date the charge against him was dismissed administratively.  He therefore may proceed with his claims for malicious prosecution, malicious abuse of process, and malicious use of process.

Defendants also assert that plaintiffs' tort claims should be dismissed to the extent they seek damages for pain and suffering.  The New Jersey Tort Claims Act provides:

> No damages shall be awarded against a public entity or public employee for pain and suffering resulting from any injury; provided, however, that this limitation on the recovery of damages for pain and suffering shall not apply in cases of permanent loss of a bodily function, permanent disfigurement or dismemberment where the medical treatment expenses are in excess of $3,600.00. For purposes of this section medical treatment expenses are defined as the reasonable value of services rendered for necessary surgical, medical and dental treatment of the claimant for such injury, sickness or disease, including prosthetic devices and ambulance, hospital or professional nursing service.

N.J. Stat. Ann. § 59:9-2.

On his notice, Chun listed "physical pain during assault" as his injury but did not plead any loss of bodily function, permanent disfigurement, or dismemberment.  Mills listed mental stress as the injury on his notice of tort claim but not physical injury.  However, the Tort Claim Act further provides that "[n]othing in this Act shall exonerate a public employee from liability if it is established that his conduct . . . constituted . . . actual malice or willful misconduct."  Id. § 59:3-14(a).  In that event, the "full measure of recovery applicable to a person in the private sector" controls.  Id. § 59:3-14(b); see also Toto v. Ensuar, 952 A.2d 463, 471 (N.J. 2008).  Thus, the application of the bar on pain and suffering damages turns on the type of tort alleged.

Chun has brought claims for conversion, false arrest, battery, false imprisonment, false light, invasion of privacy, defamation, libel, and slander, civil conspiracy, and intentional infliction of emotional distress.  These are intentional torts requiring willful misconduct and thus are not subject to the limitation on damages for pain and suffering.  Chun's claims for negligence, gross negligence, and negligent infliction of emotional distress, which do not require a finding of willful conduct, are barred to the extent he seeks damages for pain and suffering as to those claims.  As to Mills, his claims for malicious prosecution, malicious abuse of process,

-16-

and malicious use of process are intentional torts requiring a showing of actual malice and thus are not subject to the limitation on damages for pain and suffering.

Accordingly, the motion of defendants to dismiss plaintiffs' complaint is granted as to the tort claims of Mills set forth in Counts I, VII-XI and XIII-XVIII.[5]  The motion of defendants to dismiss is also granted as to the tort claims of Chun in Counts X, XI, and XVIII to the extent he seeks damages for pain and suffering.  The motion is otherwise denied.[6]

---

5.  Chun filed his notice of claim on January 9, 2018 and therefore defendants do not seek to dismiss his tort claims as untimely.

6.  Defendants also assert that they are immune from plaintiffs' tort claims.  The New Jersey Tort Claims Act provides that "[a] public employee is not liable if he acts in good faith in the execution or enforcement of any law."  N.J. Stat. Ann. § 59:3-3.  The New Jersey Supreme Court established that "[t]he same standard of objective reasonableness that applies in § 1983 actions also governs questions of good faith arising under the Tort Claims Act."  Wildoner v. Borough of Ramsey, 744 A.2d 1146, 1153 (N.J. 2000); see also Jimenez v. New Jersey, 245 F. Supp. 2d 584, 588 (D.N.J. 2003).  Because we find that defendants are not entitled to qualified immunity under § 1983, we conclude they are not entitled to the benefit of good faith immunity under the New Jersey Tort Claims Act.